FILED NOV 28 '22 PM 3:16 USDCALS

# UNITED STATE DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ALABAMA
## MOBILE DIVISION

| | | |
|---|---|---|
| ESSENCE JACKSON<br>Plaintiff | * | CIVIL ACTION #: 22-478 CG-N |
| VERSUS | * | JUDGE: Granade |
| SHELL CHEMICAL LP<br>Defendant | * | MAGISTRATE: Nelson |

\* \* \* \* \* \* \* \* \*

## COMPLAINT

The complaint of Essence Jackson, a person of the age of majority domiciled in the Jefferson Parish, State of Louisiana, a resident with a cause of action arising in the Southern District of Alabama, states her cause of action against the defendants in the following respect to-wi:

1.

This is an action under Title VII of the Civil Rights Act 1964, as amended, 42 U.S.C. 2000e-1 et seq., the Civil Rights Act of 1991, 42 U.S.C. § 1981, et. seq. ("Section 1981"), Family Medical Leave Act (FMLA), 29 U.S.C. §§ 2601-2654 and the Americas with Disabilities Act (ADA), 42 U.S.C. 12101 et seq., against the defendant, Shell Chemical, LP, for acts of deliberate indifference because of her race, gender and disability. Such indifferent treatment created a hostile work environment that caused plaintiff to seek medical attention for anxiety and major depression and other related

psychological conditions.

2.

## JURISDICTION

a) The court has personal and subject matter jurisdiction over plaintiff's claims under 28 U.S.C. §1331, 42 U.S.C. 2000e-5(f) , 28 U.S.C. §1343 and 42 U.S.C. §1981.

b) Venue is proper in the Southern District of Alabama pursuant to 28 U.S.C. §1391 and 42 U.S.C §1981 because the events which give rise to this action occurred within this district.

3.

## PARTIES

**PLAINTIFF:**

Plaintiff is an African American female, who resides in the State of Louisiana, Parish of Gretna, and a citizen of the United States of America subject to the jurisdiction of this court.

4.

**DEFENDANT:**

**Shell Chemical, PL**, is authorized to do and was doing business in the State of Alabama, with it's registered agent CT Corporation System, at 2 North Jackson St. Suite 605, Montgomery, AL 36104.

5.

Defendant is now and at all times relevant hereto, has been a for-profit entity engaged in an industry affecting commerce. During all times relevant hereto, Defendant has employed five hundred (500) or more employees for the requisite duration under Title VII in accordance with 42 U.S.C. §2000e(b).

6.

## CLAIMS

The petitioner seeks redress of the discriminatory conduct by the defendant for disparate treatment because of her race, gender (female), retaliatory conduct, interfering with protective activity under the FMLA and disability. In further violating these Federally protected right, the defendant created a hostile work environment that caused petitioner to be placed under a physician's care for anxiety and major depression, which is more fully set forth herein.

7.

## FACTUAL ALLEGATIONS

On August 28, 2017, the petitioner received an offer of employment from the defendant as a Process Technician (Junior)-Mobile Alabama. She accepted the position per defendant's instructions via the candidate portal prior to August 31, 2017. The plaintiff was hired on October 11, 2017 as a

process operator and the only African American female in this postion and unit.

8.

In January, 2018, petitioner was assigned to her first unit. In that unit was a Neo Nazi Hate Symbol drawn on the Kero Pump around piping. This was immediately reported the senior unit operator, who ignored it. A co-worker, African American, Warren Butler, advised plaintiff that "It's racist here and you'll soon see."

9.

After reporting the Nazi symbol drawn in the unit, the mail Caucasian employees began to harassing the plaintiff with racial comments and her needig to leave the plant.

10.

In October, 2019, plaintiff became extremely uncomfortable and feared for her safety. She went to Wes Mock and Todd Jednat requesting theie help with obtaining a transfer back to Louisiana sites.

11.

In November, 2019, a co-worker and plaintiff were directed to one of the Conference Rooms on site, wherein they were informed, by the leadership, the Mobile site was up for sale. However, Wes Mock and Karen Miller advised

plaintiff that her transfer request would be honored because her request to be transfer was made a month prior to the sale announcement.

12.

The transfer request, according to defendant's policy, were to be and remain confidential. However, Joe Waters and Warren Butler learned of plaintiff request to be transferred from co-workers discussing it on different shifts. The only people that were aware of the transfer were Karen Miller (Plant Mgr.), Wes Mock Production Mgr.) and Todd Jednat (Production Supervisor).

13.

Other employees resented plaintiff and began labeling her and criticizing her.

14.

In January/February, 2020, plaintiff was advised by Todd Jednate, Production Supervisor, that Shell Convent wanted plainiff at their site. At the same time of plaintiff's approved transfer, two Caucasian males, Avin Gupta and Alexander Nader were also approved and transferred.

15.

During the pendency of plaintiff's approved transfer, In June, 2020, HSSE Leadership Michael Davidson, in the wake of George Floyd's death,

posted on Social Media (Facebook), after President Trump mobilized troops to end the Black Lives matter protest, "This post make me want to listen to the star spangled banner and let the bodies hit the floor."

16.

Davidson's post was reported by plaintiff to Darren Wilson, Process Operation Specialist. On the following day when plaintiff showed up for her shift, Jeremy Headgard and Cory Clark, in plaintiff's presence, made remarks about people reporting what's on another person's facebook needing to mind their business.

17.

Following plaintiff reporting Davidson, Cory Clark placed a white power hand signal sticker on his work locker and drives to work with a Confederate Flag on his truck. Plaintiff report the white supremacy sign that was on Clark's locker and the fact that he drives to work with a Confederate Flag to Darren Wilson. Todd Jednat summoned plaintiff to his office regarding the racial symbols and comments. He explained to plaintiff that those things didn't mean what she thought they meant.

18.

By reporting these racial instances, plaintiff locker was vandalized, her employment stickers were ripped off her locker, her locker was broken into, the

mirror given to er by Shell that read "You are a Hero" was defaced to read "Youhung in the Chiller Unit are a Zero." The "H" was written over to reflect "Z". Plaintiff was also told that she will not get that transfer now.

19.

On June 7, 2020, Erin Latern, Shell H.R., contacted plaintiff to inform her that she was in charge if investigating the facbook post of Davidson. Shortly thereafter, in July, 2020, a noose was hung in the Chiller Unit where she was training. Plaintiff was advised not to say anything in fear of further harassment and retaliation.

20.

In August, 2020, plaintiff was advised by Todd Jednat that her transfer was a no-go because of her interview with Len Leblanc in March.

21.

In a need to speak to someone, plaintiff contacted Ryan Moody, Operation Engineer, for help with the racism she has been subjected too. In an attempt to assit plaintiff, Moody emailed relative plant personnel for assistance to not avail.

22.

In October, 2020, Plaintiff was verbally attacked, belittled and disrespected by Jeremy Headgard. Headgard, in the lunch room, took plaintiff

personal items that were in a chair, threw them all over the floor. He told plaintiff "Yo sh–t don't deserve to be in a chair" and that "she needed to bring her ass back to Louisiana." Co-worker Warren Butler among others were present to witness the harassment and bullying. Two days later, Headgard verbally attack plaintiff again using profanity to express his hate of her race. This was done in front of co-worker Joselito Marand and contractors.

23.

Days after this incident, a drawing of the black person hanging from a tree was put in the port-let, which were viewed by contractors on the site. The drawing was reported to management..

24.

Plaintiff reported Headgard's harassment and bullying to H.R. and after their investigation, they found plaintiff claim to have merit. Headgard remained in close proximity to plaintiff under the threat of two years probation.

25.

The racial attacks, verbally, the nooses in her work area and on the site, the white power hand signs and Nazi swastikas allowed on employees lockers, bullying and constant harassment created fear and emotioal distress that required plaintiff to seek and obtain medical treatment.

26.

On Feburary 24, 2021, plaintiff went out on medical leave per FMLA. Plaintiff received her medical certification on this date and began treatment on March 9, 2021.

27.

Per the medical report, plaintiff suffered with Anxiety and major depression. The physician reports plaintiff PHQ-9[1] score of 20, denoting severe depression.

28.

While on FMLA, defendant constantly called the plaintiff to return to work and advised her that she was on the schedule. The constant calling and demanding the plaintiff to retuen to work interfered with and violated her protected activity while on leave.

29.

As such, on July 6, 2021, plaintiff was forced to resign from her employment. As explained in her email to her employer, she no longer felt safe mentally nor physically and returning back would not be in her best interest, as the work environment is hostile with the harassment and bullying.

---

[1] A PHQ-9 score total of 0-4 points equals "normal" or minimal depression. Scoring between 5-9 points indicates mild depression, 10-14 points indicates moderate depression, 15-19 points indicates moderately severe depression, and 20 or more points indicates severe depression.

30.

On July 6, 2021, after plaintiff resigned, Karen Miller, General Manager, addressed the offensive drawing of a black person hanging from a tree and advising that such symbolism used to evoke fear and represent hate, such as, Confederate flag, Nazi symbols or nooses will not be tolerated.

## CAUSES OF ACTION

31.

Plaintiff repeats the allegations contained in paragraphs 1-30 as though set forth verbatim.

32.

The defendant, through the actions or inactions of its employees and/or agents, discriminated against the petitioner by failing to remediate the conduct of it's employees and fostered further violative conduct.

33.

The defedant, through the actions or inactions of its employees and/or agents, allowed employees, from January, 2018-2021, to act indifferent toward plaintiff, an African-American female while showing favoritism to Caucasian males. Requested transfers and or leave was liberally granted to Caucasians and denied to petitioner and other African-Americans, under similar or great circumstances, all of whom have filed complaints of discrimination against the

defendant.

34.

The VA, through the actions or inactions of its employees and/or agents, permitted management, from July, 2018-2021, to reprimand, falsify documents and harass plaintiff who was still under physician's care to document her attendants as "NO SHOW" when it was an excuse absence for medical reasons, that is not being cleared by the physican to return to work.

35.

The defendant, through the actions or inactions of its employees and/or agents, failed to provide reasonable accommodations for the petitioner to work. Management, from July, 2020-2021, consistently relocated the petitioner work area to place her in the most inconvenient position despite her disability. Requiring petitioner to maintain the same production under the same pre-disable condition added to plaintiff's emotional stress and anguish, who suffers with a mental disability, a medical condition known by the defendants.

36.

Under the doctrine of *respondeat superior*, as the employer, the defendant is jointly and solidarily liable for acts of discrimination against the

petitioner and therefore the abovementioned defendant is liable for the Discriminatory conduct of it's employees named herein.

37.

Moreover, the defendant independently violated Title VII of the Civil Rights Act 1964, as amended, 42 U.S.C. 2000e-1 et seq., the Civil Rights Act of 1991, 42 U.S.C. § 1981, et. seq. ("Section 1981"), Family Medical Leave Act (FMLA), 29 U.S.C. §§ 2601-2654 and the Americas with Disabilities Act (ADA), 42 U.S.C. 12101 et seq., by failing to redress the petitioner's Federally protected rights after violative acts of it's employees, including such indifferent treatment that created a hostile work environment that caused plaintiff to seek medical attention for anxiety and major depression and other related psychological conditions.

## DAMAGES

38.

Plaintiff repeats the allegations contained in paragraphs 1-37 as though set forth verbatim.

39.

As a direct and proximate result of the violative conduct of the defendants, petitioner, suffered mental anguish, emotional trauma, loss of

income, loss of enjoyment of life and self confidence.

## **RELIEF SOUGHT**

40.

The plaintiff is entitled to damages sufficient to and deemed appropriate by this court for the violative conduct of the defendants, including punitive damages to defray all future conduct of the defendant.

41.

Complainant is also entitle to all equitable relief deem appropriate by the court.

42.

Complainant is unable to pay cost for filing this lawsuit and as the expense of litigation accrues and request that she be allowed to prosecute her matter without prepayment of cost. Attached hereto is complaint's application to proceed in forma pauperis.

WHEREFORE, plaintiff, Essence Jackson, prays that the defendant be duly cited to answer the complaint within the delays allowed, that the defendant be served with a copy of same and that after due proceeding are had herein, there by judgment in her favor and against defendant, Shell Chemical Company, PL, as follows

1)   General damages for mental and emotional suffering casued by

defendant's misconduct;

2) Punitive damages based on Defendant's willful, malicious, intentional and deliberate acts, including ratification, condonation and approval of said acts;

3) Reasonable Attorney fees and expenses of litigation;

4) Trial by jury as to all issues;

5) Judicial interest on the aggregate amount from date of demand;

6) Declaratory relief to the effect that defendant has violated Plaintiff's statutory right    ;

7) Compensation for loss wages, back and front pay, including employment related benefits;

8) Liquidated damages; and

9) All other relief, general and equitable deemed appropriate by this court.

Respectfully submitted,

*Essence Jackson*

Essence A. Jackson. Pro se
2433 Lynnbrook Dr.
Harvey, LA 70058
Dir.:(504)236-1678
Jacksonessence84@gmail.com

