IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

ESSENCE JACKSON,

               Plaintiff,

      v.

SHELL CHEMICAL LP,

               Defendant.

CIVIL ACTION NO. 22-004478-CG-N

## DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS OR, IN THE ALTERNATIVE, FOR A MORE DEFINITE STATEMENT

## INTRODUCTION

Plaintiff Essence Jackson asserts various claims against Shell Chemical LP[1] citing a broad range of federal employment law statutes, including: Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 1981("Section 1981"), the Americans with Disabilities Act ("ADA"), and the Family and Medical Leave Act ("FMLA").

Plaintiff's Complaint lacks the clarity and detail needed to put Shell on notice as to the nature and scope of her claims. First, plaintiff does not separate her claims for relief. Instead, she discusses them summarily in two separate, seemingly inconsistent paragraphs. Second, plaintiff's factual allegations are often lacking in detail, disjointed, and unclear. Third, and most important, plaintiff does not specify which of her factual allegations

---

[1] Plaintiff named Shell Chemical LP as the defendant. However, the proper defendant is Shell Chemical Company LLC ("Shell").

support each of her claims.

Indeed, Shell found it difficult to identify plaintiff's claims for this motion. As best as it can tell, Shell believes plaintiff is asserting the following claims:

- Title VII race-based disparate treatment claim;
- Unspecified Section 1981 claims;
- Title VII sex-based disparate treatment claim;
- ADA disability-based discrimination and failure to accommodate claims;
- FMLA claim "for interfering with protective activity";
- Unspecified retaliation claims; and
- Unspecified hostile work environment claim.[2]

While courts should afford *pro se* plaintiffs a measure of leniency, defendants' due process rights must not be imperiled in the process. Here, plaintiff's allegations fail to meet even a lenient interpretation of the pleading standards enshrined in Fed. R. Civ. P. 8, *Iqbal*, and *Twombly*. Consequently, Shell respectfully requests that this Court **DISMISS** plaintiff's claims **WITHOUT PREJUDICE**. In the alternative, Shell asks this Court to order plaintiff to provide a more definite statement of her allegations.

## FACTUAL BACKGROUND

Plaintiff was hired on or around October 11, 2017, and most recently worked for Shell as a Utility 2 Operator at its Shell Mobile Manufacturing site. (Dkt. 1, Statement of Facts ¶ 7.) According to plaintiff, in or around January of 2018, she was assigned to her first unit in which a "Neo Nazi Hate Symbol" was drawn on a piece of equipment. (*Id.* ¶

---

[2] Plaintiff alleges Shell's indifferent treatment created a hostile work environment. Shell interprets this claim as related to her race-based discrimination and harassment allegations because she has not alleged harassment and/or bullying on the basis of another protected class status.

8.) Plaintiff alleges the drawn symbol was reported to the senior unit operator, who ignored it, and that after reporting it, male Caucasian employees harassed her with racial comments. (*Id.* ¶¶ 8-9.) Plaintiff further alleges that in or around October of 2019, she became extremely uncomfortable and feared for her safety, so she went to Wes Mock, Production Manager, and Todd Jednat, Production Supervisor, to ask for their help in obtaining a transfer back to Louisiana. (*Id.* ¶¶ 10, 12.)

According to plaintiff, in or around November 2019, she and a co-worker were directed to a conference room and informed by leadership that the Mobile plant was up for sale. (*Id.* ¶ 11.) Plaintiff alleges Wes Mock and Karen Miller, General Manager, informed her that her transfer request would be honored because the request was made a month prior to the sale announcement. (*Id.*) Plaintiff further alleges that two other employees, Joe Waters and Warren Butler, learned of her transfer request from other co-workers. (*Id.* ¶ 12.) Plaintiff claims other employees resented her and began labeling her and criticizing her. (*Id.* ¶ 13.) Plaintiff contends that in or around January or February of 2020, Jednat advised her that Shell Convent wanted her at their site. Plaintiff claims that at the time of her purportedly approved transfer, two Caucasian males, were also approved and transferred. (*Id.* ¶ 14.)

Plaintiff next alleges that in June of 2020, "during the pendency" of her "approved transfer," a Shell employee posted a New York Post article on their personal Facebook account titled *Trump Mobilizes US Military to End Unprecedent Riots* and commented: "This post make[s] me want to listen to the star spangled banner and let the bodies hit the floor." (*Id.* ¶ 15.) Plaintiff alleges she reported the Facebook post to Darren Wilson, Process

3

Operation Specialist, and that when she reported to work the next day, two of her coworkers – Jeremy Hedegaard and Cory Clark – made remarks in her presence about how "people reporting what's on another person's facebook" needed to mind their business. (*Id.* ¶ 16.)

Separately, plaintiff claims Clark placed a "white power hand signal sticker" on his work locker, and "drives to work with a Confederate Flag on his truck." (*Id.* ¶ 17.) Plaintiff alleges she reported the sticker on Clark's locker and the flag on his truck to Wilson, and that after doing so, Jednat asked her to come to his office and allegedly explained that "those things didn't mean what [plaintiff] thought they meant." (*Id.* ¶ 17.)

Plaintiff further claims, among other things, her locker was vandalized and alleges someone told her that "she [would] not get that transfer now." (*Id.* ¶ 18.) Plaintiff claims that on June 7, 2020, someone from Human Resources informed her that she was the person in charge of investigating the reported Facebook post. (*Id.* ¶ 19.) Plaintiff further alleges that in July of 2020 a noose was hung in the Chiller Unit where she was training, and that she was advised not to say anything. (*Id.*)

Plaintiff alleges that in August of 2020, Jednat told her that "her transfer was a no-go because of her interview with Len Leblanc in March." (*Id.* ¶ 20.) Plaintiff claims that in October 2020, she was verbally attacked and disrespected by Hedegaard, who allegedly took her personal items that were in a chair and threw them all over the floor, and stated "Yo sh –t don't deserve to be in a chair" and that "she needed to bring her ass back to Louisiana." (*Id.* ¶ 22.) Plaintiff further claims that two days later Hedegaard used profanity to express his hate of her race. Plaintiff claims that days later, another racially offensive drawing appeared in a portable toilet, which was viewed by contractors on site and reported

4

to management. The General Manager addressed the drawing in the portable bathroom and made clear that symbols of fear or hate displayed in any manner on Shell property would not be tolerated. (*Id.* ¶ 30.) Plaintiff alleges she reported Hedegaard's conduct to Human Resources, which investigated her claim and found certain aspects of the complaint meritorious. (*Id.* ¶ 24.)

Plaintiff alleges the above-detailed conduct required her to get medical treatment. (*Id.* ¶ 25.) Plaintiff further alleges that on February 24, 2021, she received her medical certification and went on FMLA, and began treatment on March 9, 2021. (*Id.* ¶ 26.) Plaintiff claims her medical report states she suffered from anxiety and depression. (*Id.* ¶ 27.) According to plaintiff, while she was on FMLA, Shell representatives called her to return to work and advised her she was on the schedule. (*Id.* ¶ 28.) Plaintiff claims she was forced to resign on July 6, 2021, and explained in an email to Shell that she no longer felt safe and that returning to her job would not be in her best interest. (*Id.* ¶ 29.)

On November 8, 2021, plaintiff filed a Charge of Discrimination with the EEOC alleging discrimination that occurred between the dates of March 1, 2021 and July 6, 2021. (Exhibit A, EEOC Charge of Discrimination.)[3] A Determination and Notice of Rights letter was issued on August 15, 2022, informing plaintiff her lawsuit must be filed within 90 days

---

[3] While ordinarily exhibits would not be a part of the record under review for dismissal under Fed. R. Civ. P. 12(b)(6) unless attached to the complaint, plaintiff's EEOC charge is not in dispute and is central to the complaint. Accordingly, the Court may properly consider it on a motion to dismiss. *See Harris v. Ivax Corp.,* 182 F.3d 799, 802 n. 2 (11th Cir. 1999). *See also Lambert v. Ala. Dept. of Youth Servs.,* 150 F. App'x 990, 991, 992 (11th Cir. 2005) (EEOC charge of discrimination attached to motion to dismiss and considered).

of receipt of the Notice. Plaintiff filed her Complaint on November 28, 2022.

## LEGAL ARGUMENT

## I.     FEDERAL PLEADING STANDARDS COUNSEL DISMISSAL

When considering a motion to dismiss, a court assumes the truth of only the factual allegations and draws only reasonable inferences that the defendant is liable for the misconduct alleged. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*quoting Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Courts afford no presumption of truth to legal conclusions or recitations of the basic elements of a cause of action. *Franklin v. Curry*, 738 F.3d 1246, 1248 n. 1 (11th Cir. 2013). In other words, the court is neither bound by a plaintiff's legal characterization of the facts, nor required to ignore facts set forth in the complaint that undermine the plaintiff's claims.

The United States Supreme Court has instructed that a plaintiff may only avoid dismissal by pleading facts sufficient to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. The Court explained that Fed. R. Civ. P. 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678. "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action," or "naked assertion[s] devoid of further factual enhancement," will not be sufficient to state a claim for relief pursuant to Rule 8. *Id*. (*quoting Twombly*, 550 U.S. at 555, 557) (internal quotations omitted).

It is no longer sufficient that the complaint only "avoid foreclosing possible bases for relief; it must actually *suggest* that the plaintiff has a right to relief, by providing allegations that raise a right to relief above the speculative level." *Twombly*, 550 U.S. at

557. To do so, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*quoting Twombly*, 550 U.S. at 557). This requires "more than a sheer possibility that a defendant has acted unlawfully." *Id*.

Further, "[d]etermining the plausibility of a claim is "a context-specific task that requires the court to draw on its judicial experience and common sense." *Id.* at 679. Thus, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not "show[n]"—"that the pleader is entitled to relief." *Id.* (*quoting* Fed. R. Civ. P. 8(a)(2)).

## II.   PLAINTIFF'S DISABILITY-BASED CLAIMS ARE INSUFFICIENT

Although plaintiff did not separate her claims for relief under the ADA and does not make clear which allegations pertain to which claims, as best Shell can discern, plaintiff premises her ADA claim on Shell's failure to accommodate her alleged mental disability. More specifically, plaintiff asserts Shell violated the ADA by failing to accommodate her purported disability when it "consistently relocated [her] work area to place her in the most inconvenient position" and by "[r]equiring [her] to maintain the same production under the same pre-disable [sic] condition." (Dkt. 1, ¶ 35.) However, because plaintiff may have intended to advance an ADA disparate treatment claim, Shell addresses both theories.

### A.   Disparate Treatment Disability Discrimination

To state a discrimination claim under the ADA, a plaintiff must allege sufficient facts to plausibly suggest: (1) that she suffers from a disability, (2) she is a qualified individual, and (3) that a "covered entity" discriminated against her on account of her

disability." *Surtain v. Hamlin Terrace Found.*, 789 F.3d 1239, 1246 (11th Cir. 2015) (*per curiam*) (*quoting Cramer v. Florida*, 117 F.3d 1258, 1264 (11th Cir. 1997)).[4] A disparate treatment plaintiff must establish "that the defendant had a discriminatory intent or motive" for taking a job-related action against the plaintiff. *Martinez v. City of Birmingham*, No. 2:18-cv-0465-JEO, 2019 U.S. Dist. LEXIS 15132, at *7-8 (N.D. Ala. Jan. 31, 2019). In doing so, the plaintiff also must allege that the disability actually motivated the employment decision. *Smith v. Miami-Dade County*, 621 F. App'x 955, 959 (11th Cir. 2015).

Here, plaintiff fails to allege sufficient facts to state a claim for disparate treatment under the ADA for a number of reasons. First, she does not adequately allege that she had a disability under the ADA or provide any degree of specificity as to what this condition encompasses. As noted, plaintiff simply concludes that she "suffers with [sic] a mental disability, a medical condition known by the defendants", but does not sufficiently allege that the relevant decisionmakers knew of a disability (Dkt. 1, ¶ 35.) Earlier in her Complaint, among her discussion of taking FMLA leave, plaintiff stated that "[p]er the medical report, [she] suffered with [a]nxiety and major depression."

However, the Complaint does not otherwise name or describe plaintiff's alleged impairment, much less include any facts which suggest the impairment substantially

---

[4] The elements of a *prima facie* case can be a "helpful guide" in determining whether a claim is plausible at the motion to dismiss phase. *Powell v. Harsco Metal*, 2013 U.S. Dist. LEXIS 86712, 2013 WL 3242759, at *5 (N.D. Ala. 2013) (*citing Bowers v. Bd. Of Regents of Univ. Sys. Of Georgia*, 509 Fed. App'x 906, 910 (11th Cir. 2013)).

limited a major life activity. *See, e.g., Garcia v. Goodwill Indus. of S. Fla., Inc.,* 2019 U.S. Dist. LEXIS 198676, at *6-7 (S.D. Fla. Nov. 15, 2019) (noting that "a complaint must allege factual matter explaining *how* the alleged ailment substantially limits a major life activity" and that "district courts throughout the country . . . routinely reject conclusory allegations of disabilities under the Americans with Disabilities Act") (emphasis in original). *See also Burks v. Deepseafood,* No. 22-00008-TFM-B, 2022 U.S. Dist. LEXIS 141614, at *18-20 (S.D. Ala. Aug. 9, 2022).

Further, plaintiff's Complaint contains no description of the essential duties of her job and lacks any factual allegations that would allow the Court to reasonably infer she is a "qualified individual with a disability" and can perform those essential duties with or without reasonable accommodation.

Above all else, plaintiff fails to allege sufficient facts to suggest intentional discrimination on the basis of disability. Nowhere in her allegations does plaintiff claim Shell took a job-related action against her that related to her alleged disability in any way. Moreover, plaintiff alleges no comments, remarks, occurrences, or events that indicate a disability-based discriminatory animus by Shell or any of her supervisors, and she identifies no similarly situated employees who were treated more favorably than she was. *Id.* at *21-23 (S.D. Ala. Aug. 9, 2022) (*citing Gober v. Newton Cty. Bd. of Health*, 2021 U.S. Dist. LEXIS 255558, at *28, 2021 WL 7632542, at *9 (N.D. Ga. Dec. 17, 2021) (recommending dismissal of ADA disparate treatment claim where plaintiff failed to allege any facts suggesting discriminatory animus by her employer and failed to identify similarly situated employees who were treated more favorably than her).

9

Simply put, plaintiff's conclusory assertions do not plausibly suggest she was subjected to intentional discrimination on the basis of disability. *See Martinez,* 2019 U.S. Dist. LEXIS 15132, at *7-8; *Smith,* 621 F. App'x at 959 (11th Cir. 2015) (stating that the plaintiff must allege that the disability actually motivated the employment decision).

### B.  Failure to Accommodate a Disability

Plaintiff's claim that Shell did not provide reasonable accommodations for her alleged disability is equally insufficient. In contrast to a disparate treatment claim, a failure to make reasonable accommodations claim does not require discriminatory intent "and occurs when a covered entity breaches its affirmative duty to reasonably accommodate the known physical or mental limitations of an otherwise qualified person." *Id.* at *18.

To state a claim for failure to accommodate under the ADA, a plaintiff must allege sufficient facts to plausibly suggest that: (1) she is disabled; (2) she is a qualified individual, meaning able to perform the essential functions of the job; and (3) she was discriminated against because of her disability by way of the defendant's failure to provide a reasonable accommodation." *Russell v. City of Tampa*, 652 F. App'x 765, 767 (11th Cir. 2016) (*per curiam*). As discussed above, plaintiff fails to plausibly allege she was a disabled person or a "qualified individual" within the meaning of the ADA.

Beyond that, plaintiff has not included sufficient allegations regarding a reasonable accommodation because the duty to provide a reasonable accommodation is not triggered unless a specific demand for an accommodation has been made by the employee. *Gaston v. Bellingrath Gardens & Home, Inc*., 167 F.3d 1361, 1363 (11th Cir. 1999); *see also Moreira v. Am. Airlines, Inc*., 157 F. Supp. 3d 1208, 1216 (S.D. Fla. 2016) ("The duty to

accommodate is triggered only when an individual makes a request that is direct, specific, and identifies how it is linked to his disability.")

Plaintiff does not allege that she requested an accommodation, or that the need for an accommodation was otherwise obvious to Shell.

## III.    PLAINTIFF'S FMLA CLAIM IS EQUALLY INSUFFICIENT

The FMLA provides eligible employees the right to 12 weeks of leave for a serious health condition that renders the employee unable to perform the functions of their position. *Munoz v. Selig Enters., Inc.,* 981 F.3d 1265, 1274 (11th Cir. 2020); *see* 29 U.S.C. § 2612(a)(1). Additionally, it protects employees against interference with the exercise or attempted exercise of their substantive rights under the statute. 29 U.S.C. § 2615(a)(1).

To state an FMLA interference claim, an employee must allege that she was entitled to a benefit and was denied that benefit. To the extent plaintiff claims FMLA retaliation, doing so requires an employee allege sufficient facts to plausibly suggest that: (1) she engaged in a statutorily protected activity; (2) she suffered an adverse employment decision; and (3) the decision was causally related to the protected activity.

Here, plaintiff's Complaint alleges she took leave under the FMLA starting on or around February 24, 2021. (Dkt. 1, ¶ 26.) Thereafter, she alleges that while on FMLA, Shell "constantly called the plaintiff to return to work and advised her she was on the schedule," and that the "calling and demanding" plaintiff return to work interfered with and violated her protected leave. (*Id.* ¶ 28.) But plaintiff concedes she was actually granted FMLA leave. Consequently, it is insufficient for plaintiff to simply assert her FMLA leave was effectively denied as a result of calls. Plaintiff does not provide factual allegations

specifying either the date range or frequency or the specific content of said calls.

Indeed, if plaintiff's FMLA leave started on or around February 24, 2021 as she says, her 12 weeks of leave would have been exhausted by mid-May of 2021. But plaintiff's Complaint jumps ahead, stating that as a result of the calls "on July 6, 2021, plaintiff was forced to resign from her employment." (*Id.* ¶ 29.) Other than stating Shell called her "while on FMLA," plaintiff has pled no facts that would explain why or how she was still purportedly on FMLA leave nearly two months later when she resigned on July 6, 2021. Accordingly, plaintiff's FMLA interference claim should be dismissed.

## IV.    PLAINTIFF'S TITLE VII CLAIMS ARE ALSO LACKING

Plaintiff asserts the following Title VII claims: race and sex-based disparate treatment, hostile work environment, and retaliation. Title VII makes it unlawful for an employer to "fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin."42 U.S.C. § 2000e-2(a)(1).

Although a Title VII complaint need not allege facts sufficient to make out a classic *McDonnell Douglas prima facie* case, it must provide enough factual matter (taken as true) to suggest intentional discrimination based on a protected characteristic. *See Edwards v. Prime, Inc.*, 602 F.3d 1276, 1301 (11th Cir. 2010).

### A.    Race-based Disparate Treatment

To establish a *prima facie* case of discrimination under Title VII, a plaintiff generally must establish that (1) she is a member of a protected class; (2) she was qualified

to do the job; (3) she was subjected to an adverse employment action; and (4) her employer treated similarly situated employees more favorably. *See Rice-Lamar v. City of Ft. Lauderdale, Fla.,* 232 F.3d 836, 842-43 (11th Cir. 2000); *Carico v. UPS Ground Freight, Inc.*, No. 2:19-CV-756-WKW, 2021 U.S. Dist. LEXIS 115024, at *35-36 (M.D. Ala. June 21, 2021). Moreover, a disparate treatment plaintiff must establish "that the defendant had a discriminatory intent or motive" for taking a job-related action, and that said action was "materially adverse," viewed objectively from the perspective of a reasonable employee. *See Davis v. Town of Lake Park, Fla*., 245 F.3d 1232, 1238-40 (11th Cir. 2001).

Here, plaintiff seems to allege that the relevant adverse action relates to her request to transfer to the Convent, Louisiana facility. (*Id.* ¶¶ 14, 20.) However, Shell's denial of plaintiff's transfer request does not constitute an actionable adverse employment action because it did not "serious[ly] or material[ly] change [] the terms, conditions, or privileges of [plaintiff's] employment." *Dixon v. Palm Beach Cty. Parks and Recreation Dep't*, 343 F. App'x 500, 502 (11th Cir. 2009). Plaintiff has neither alleged that her transfer request would have resulted in any material change to the terms, conditions or privileges of her employment, nor that her not being selected after she interviewed in any way impacted the terms, conditions, or privileges of her employment. Relatedly, although plaintiff references two Caucasian males who were allegedly approved and transferred at the time of her "approved transfer," she has alleged insufficient information to show they were in fact similarly situated in terms of their position titles, tenure, and the like. (S*ee* Dkt. ¶ 14.)

### B.    Race-based Harassment Claim

Plaintiff also has not stated an actionable claim for race-based harassment under

Title VII. To establish race-based harassment, plaintiff must show she was subjected to a race-based hostile work environment. Here, plaintiff alleges various instances of racially-motivated conduct that occurred throughout her employment. These allegations, however, are insufficient to state a claim for a hostile work environment as contemplated by the Eleventh Circuit.

To plead a hostile work environment claim under Title VII, plaintiff has to allege facts supporting the following elements: (1) she belongs to a protected group; (2) she was subjected to unwelcome harassment; (3) the harassment was based on her membership in the protected group; (4) it was severe or pervasive enough to alter the terms and conditions of employment and create a hostile or abusive working environment; and (5) the employer is responsible for that environment under a theory of either vicarious or direct liability. *See Edwards v. Prime, Inc.,* 602 F.3d 1276, 1300 (11th Cir. 2010); *Furcron v. Mail Centers Plus, LLC*, 843 F.3d 1295, 1304 (11th Cir. 2016); *Reeves v. C.H. Robinson Worldwide*, Inc., 594 F.3d 798, 808 (11th Cir. 2010).

The Eleventh Circuit has reiterated that, "in order to establish that a workplace constitutes a hostile work environment, a plaintiff must show that the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Butler v. Alabama Department of Transportation*, 536 F.3d 1209, 1214 (11th Cir. 2008). *See also Johnson v. Booker T. Washington Broadcasting Service, Inc*., 234 F.3d 501, 509 (11th Cir. 2000) (concluding that "roughly fifteen separate instances of harassment over the course of four months" were actionably pervasive).

14

As for the fifth element regarding vicarious or direct liability, while an employer can be vicariously liable for an actionable hostile environment created by a supervisor, plaintiff does not allege she was harassed by a supervisor or another high-ranking employee, but rather by one or more co-workers. If the hostile work environment was created by a co-worker, rather than a supervisor, the employer must have been at least negligent to be liable. Here, as plaintiff alleged, Shell promptly initiated HR-led investigations into her complaints in order to address those incidents. Even if plaintiff is dissatisfied with the response to those incidents, she has not alleged Shell acted negligently.

Plaintiff has alleged that one coworker used racially offensive language towards her that would be not only inexcusable in the workplace, but in any situation. However, under the law of the Eleventh Circuit, plaintiff's allegations are not enough to survive Shell's motion to dismiss. Isolated and random use of deeply offensive racial slurs, even when combined with factors in the workplace, while humiliating, are insufficient to create hostile work environment. *See e.g., Cunningham v. Austal, U.S.A.,* 2011 U.S. Dist. LEXIS 100567, at *19-20 (S.D. Ala., Sept. 7, 2011); *Barrow v. Georgia Pacific Corp.*, 144 Fed. App'x 54, 2005 WL 1926420, at *3 (11th Cir. 2005) (same). Because plaintiff has failed to state a plausible claim for a hostile work environment, the motion to dismiss as to this claim should be granted.

### C.    Race-based Retaliation Claim

Retaliation is a separate violation of Title VII. *Gupta v. Florida Board of Regents*, 212 F.3d 571, 586 (11th Cir. 2000). Section 704(a) of Title VII provides protection for employees who oppose any practice made an unlawful employment practice by this

subchapter, or because they made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter. 42 U.S.C. § 2000e-3(a). To establish a *prima facie* case, the plaintiff must show that: (1) she engaged in protected activity; (2) the employer imposed on her a materially adverse action; and (3) the employer took the adverse action because the plaintiff engaged in protected activity. *Massey v. Dorning*, 611 F. Supp. 3d 1301, 1311 (N.D. Ala. 2020).

The Supreme Court recently held that, as to the causation standard for a retaliation claim, a plaintiff must "show that the [adverse employment action] would not have occurred in the absence of — that is, but-for — the defendant's conduct." *University of Texas Southwestern Med. v. Nassar*, 133 S. Ct. 2517, 2525 (2013). In other words, a plaintiff has to "establish that his or her protected activity was a but-for cause [and not just a motivating factor] of the alleged adverse employment action by the employer." *Nassar*, 133 S. Ct. at 2534. To establish a causal connection, a plaintiff must show that the decision-maker[s] [were] aware of the protected conduct, and that the protected activity and the adverse action were not wholly unrelated. *Gupta,* 212 F.3d at 590 (alteration in original) (internal quotation marks and citation omitted), *cert. denied*, 531 U.S. 1076 (2001).

As discussed above, the Complaint alleges that plaintiff reported harassing conduct from her co-worker as well as other racially motived incidents. However, plaintiff cannot point to an adverse employment action she faced other than her failed transfer request. As previously stated, not only is this not an adverse employment action, but there is no allegation in the Complaint that the decisionmaker involved with her transfer request – the interviewer at the Convent, Louisiana facility – even knew of her previously reported

16

complaints. The Complaint fails to state a claim of retaliation because there are no factual allegations to infer that a causal relationship exists between plaintiff's protected activity and any adverse action.

### D.      Section 1981

Like plaintiff's race-based harassment claim, her Section 1981 claim is also not actionable. Though plaintiff did not specifically cite Section 1981 in relation to any of her allegations, Shell assumes she intends to pursue her race-based discrimination claims under both Title VII and Section 1981 and addresses said claims accordingly.

Section 1981 safeguards an individual's freedom from racial discrimination and retaliation regarding their rights to make and enforce contracts and to the full and equal benefit of all laws and proceedings. The Eleventh Circuit has held that claims for race discrimination are cognizable under both Title VII of the Civil Rights Act of 1964, 42 U.S.C.S. § 2000e et seq., and 42 U.S.C.S. § 1981, and have the same requirements of proof and use the same analytical framework. That also applies to claims of retaliation under 42 U.S.C.S. § 1981. *See Williams v. Alabama Dept. of Corrections*, 2014 U.S. Dist. LEXIS 90048, at *3-4 (M.D. Ala. 2014) (analyzing Title VII claims in the opinion with the understanding that the analysis would also apply to the Section 1981 claim). Accordingly, plaintiff's Section 1981 claims should be dismissed for the very same reasons as her Title VII race discrimination and retaliation claims.

### E.      Gender-based Disparate Treatment Claim

Title VII also prohibits employers from discriminating in the workplace on the basis of sex. 42 U.S.C.S. § 2000e-2(a). There are two ways to establish gender-based harassment

claims under Title VII. *See Reeves v. C.H. Robinson Worldwide, Inc.,* 594 F.3d 798, 807 (11th Cir. 2010). A plaintiff could show that the employer took a tangible employment action against the employee because of the employee's gender. A tangible employment action constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits. *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761 (1998). Even if no tangible employment action is taken, sexual harassment may be actionable if it creates a hostile work environment. Because plaintiff has not alleged sexual harassment, her gender-based disparate treatment claim is reviewed in the same manner as her race-based disparate treatment claim.

Again, the question in a disparate treatment case is "whether the protected trait actually motivated the employer's decision." *Catastrophe Mgmt. Solutions*, 852 F.3d at 1026 (*quoting Raytheon Co. v. Hernandez*, 540 U.S. 44, 53 (2003)).

Given the structural similarities between Title VII race- and gender-based claims, as well as the similarity of elements, plaintiff's gender-based claims must also fail.

## V.      PLAINTIFF DID NOT EXHAUST HER ADMINISTRATIVE REMEDIES[5]

In addition, plaintiff's Title VII disparate treatment and ADA claims are barred for failure to exhaust administrative remedies. It is well-settled that filing an administrative

---

[5]A motion to dismiss based on a plaintiff's failure to timely file an EEOC charge should be analyzed pursuant to Rule 12(b)(6). *See Pinkard v. Pullman-Standard*, 678 F.2d 1211, 1215 (5th Cir. Unit B 1982); *Fouche v. Jekyll Island-State Park Authority,* 713 F.2d 1518, 1524 (11th Cir. 1983).

charge of discrimination with the EEOC is a prerequisite to a private civil action brought pursuant to the provisions of Title VII and the ADA. *Wilkerson v. Grinnell Corp.*, 270 F.3d 1314, 1317 (11th Cir. 2001). "The first step down this path is filing a timely charge of discrimination with the EEOC." *Id.* (*citing* 42 U.S.C. § 2000e-5(b) (1994)). To be timely within a non-deferral state, such as Alabama, a charge must be filed with the EEOC within 180 days of the date of the act giving rise to the charge before a plaintiff may bring a claim for judicial relief. *Gray v. Vestavia Hills Bd. of Educ.,* 317 F. App'x 898, 902 (11th Cir. 2008) (*citing* 42 U.S.C. § 2000e-5(e)(1)). The ADA has incorporated Title VII's administrative filing requirements. *See* 42 U.S.C. § 12117(a). If a plaintiff does not file before this time elapses, then she fails to exhaust Title VII and the ADA's administrative remedies, and the plaintiff is procedurally barred from bringing a lawsuit in court.

The EEOC charge must "contain, among other things, [a] clear and concise statement of the facts, including pertinent dates, constituting the alleged unlawful employment practices." *Cobb v. Marshall*, 481 F. Supp. 2d 1248, 1254 (M.D. Ala. 2007) (*citing Alexander v. Fulton County, Georgia*, 207 F.3d 1303, 1332 (11th Cir. 2000) (overruled on unrelated grounds). A plaintiff's claims in a subsequent lawsuit are limited by the scope of the EEOC investigation. As such, judicial claims are allowed only if they amplify, clarify, or more clearly focus the allegations in the EEOC complaint. Allegations of new acts of discrimination are inappropriate. *Gregory v. Georgia Dep't of Human Resources*, 355 F.3d 1277, 1279-80 (11th Cir. 2004).

Applying the foregoing principles, for plaintiff's claims stemming from her transfer request, the 180-day statutory period began to run when plaintiff was informed that she

was not approved to transfer – in or around August of 2020. Giving plaintiff the benefit of the doubt that she was notified on August 31, 2020, she would then have been required to file a charge by March 1, 2021. Because plaintiff's Charge was not submitted until at least November 8, 2021, her claims for race and gender-based disparate treatment and ADA failure to accommodate are untimely and must be dismissed.

## VI.    MOTION FOR A MORE DEFINITE STATEMENT

In the alternative, and as for any of plaintiff's claims not dismissed by this Court, Shell moves for an order to be issued to plaintiff requiring her to cure certain deficiencies in her Complaint.

Federal Rule of Civil Procedure 12(e) permits a party to "move for a more definite statement of a pleading to which a responsive pleading is allowed but which is so vague or ambiguous that the party cannot reasonably prepare a response." Fed. R. Civ. P. 12(e). Indeed, a motion for a more definite statement will only be required when the pleading is "so vague or ambiguous that the opposing party cannot respond, even with a simple denial, in good faith or without prejudice to himself." *Burks v. Deepseafood*, No. 22-00008-TFM-B, 2022 U.S. Dist. LEXIS 141614, at *14 (S.D. Ala. Aug. 9, 2022). Rule 10(b) further provides that "a party must state its claims . . . in numbered paragraphs, each limited as far as practicable to a single set of circumstances. Fed. R. Civ. P. 10(b). If doing so would promote clarity, each claim founded on a separate transaction or occurrence . . . must be stated in a separate count . . . .". *Id*.

Complaints that violate either Rule 8(a)(2) or Rule 10(b), or both, are often disparagingly referred to as "shotgun pleadings." *Weiland v. Palm Beach Cty. Sheriff's*

*Office,* 792 F.3d 1313, 1320 (11th Cir. 2015). The Eleventh Circuit has identified four rough categories of shotgun pleadings: (1) those in which "each count adopts the allegations of all preceding counts, causing each successive count to carry all that came before and the last count to be a combination of the entire complaint;" (2) those that do not re-allege all preceding counts but are "replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action;" (3) those that do not separate each cause of action or claim for relief into a different count; and (4) those that assert "multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against." *See id.* at 1321-23.

The Eleventh Circuit has repeatedly denounced shotgun pleadings. *See Jackson v. Bank of Am.,* 898 F.3d 1348, 1354 (11th Cir. 2018). *See also Davis v. Coca-Cola Bottling Co.,* 516 F.3d 955, 979 n. 54 (11th Cir. 2008). The Court has also been clear that a district court may dismiss an impermissible shotgun pleading on that basis alone. *Jackson,* 898 F.3d at 1357.

Here, plaintiff's Complaint is a clear example of an impermissible shotgun pleading insofar as it fails to separate out each independent cause of action, and, consequently, summarily relates all of plaintiff's allegations to all her claims. Therefore, Shell asks this Court to require plaintiff to replead her allegations in a manner such that plaintiff states each of her claims independently, followed by the allegations she asserts support each claim. To allow otherwise would prejudice Shell in its ability to effectively respond to plaintiff's claims and assert necessary affirmative defenses.

## **CONCLUSION**

For the foregoing reasons, Shell respectfully requests that plaintiff's Complaint be

DISMISSED WITHOUT PREJUDICE. Or, alternatively, that plaintiff be required to make

a more definite statement by curing the aforementioned deficiencies in her Complaint, and

that the Court grant such other relief as it deems just and equitable.

Respectfully submitted,


Date: May 1, 2023                    By: s/ *Chelsea J. Bodin*
                                         Pablo Orozco (*pro hac vice* forthcoming)
                                         MN Reg. No. 0396811
                                         Chelsea J. Bodin (*pro hac vice* pending)
                                         MN Reg. No. 0400006
                                         NILAN JOHNSON LEWIS PA
                                         250 Marquette Avenue South, Suite 800
                                         Minneapolis, MN 55401
                                         Telephone: (612) 305-7500
                                         Fax: (612) 305-7501
                                         porozco@nilanjohnson.com
                                         cbodin@nilanjohnson.com

                                         ATTORNEYS FOR DEFENDANT